# Richmond.

## BAKER ET AL. V. BAKER.

### December 4th, 1890.

1. PERSONAL REPRESENTATIVES—*Liabilities—Case at bar.*—J. willed his estate, consisting partly of slaves, to his widow, and made her executrix. The slaves she kept. Her second husband qualified as administrator. He, too, did not sell the slaves and pay the debts. They were freed by the war. After her death her devisees attempted to hold him liable for their value: *held*, he was not liable therefor.

2. IDEM—*Rents—Case at bar.*—The second husband, who qualified as his wife's executor, retained possession of her land for fourteen years. Attempt was made to hold him liable for the rents during this entire period: *held*, his liability was not as executor, but personal, and was barred as to all but the five years next before suit brought.

3. IDEM—*Attorney's fees—Medical bills.*—Under the circumstances disclosed by the record the executor was entitled to credit for the attorney's fees and medical bills paid by him out of his testatrix' estate.

Appeal from decree of the circuit court of Fauquier county, rendered September 17th, 1888, in a chancery suit wherein John M. Baker was complainant, and William A. Baker and others were defendants. The decree being adverse to the complainant, he appealed. Opinion states the case.

*R. R. Campbell*, for the appellant.

*Hunton & Son*, for the appellees.

LEWIS, P., delivered the opinion of the court.

This suit was brought for a construction of the will, and an administration of the estate of Lucy A. Baker, deceased. The latter was, some time prior to the year 1858, the widow of Wm. H. Jett, deceased, by whose will she acquired personal estate, of the value of about four thousand dollars, and a tract of land containing about two hundred acres, situate in Fauquier. She was named as executrix in the will, and qualified as such in February, 1857. In January, 1858, she intermarried with the defendant, Wm. A. Baker, who soon afterwards qualified as the administrator *d. b. n.* with the will annexed of the said Jett.

Just before this marriage, the parties entered into a marriage contract wherein it was stipulated that the property then belonging to Mrs. Jett, and such as she might thereafter acquire, should remain and be held as her sole and separate estate, to be disposed of by her by will or otherwise, as she might see fit. Of the personalty bequeathed her by her husband, a part consisted of four slaves, of the aggregate value of $2,630, which she declined to sell, but kept them in her possession until they were freed by the result of the late war. She died in 1870, leaving all of her estate, real and personal, to her four children, John M. Baker, Elizabeth Baker, Mary E. Baker, and Wm. F. Baker.

The defendant, Wm. A. Baker, qualified in 1871, as her executor, and took possession of the estate, but made no settlement of his accounts, either as administrator of Jett, or as executor of his deceased wife, prior to the institution of the present suit.

The suit was brought in 1885, and in the progress thereof a settlement of these accounts was ordered to be made before a commissioner of the court, which was done. The commissioner reported that it was impossible to make an entirely accurate settlement, owing to the lapse of time and loss of evidence, and, after the report had several times been recommitted,

it was finally adjudged by the decree complained of that there was nothing due.

1. The principal point in controversy is as to the defendant's liability for the four slaves above mentioned. The circuit court held that as to those there was no liability on his part, and in this view we concur.

It appears that there were a number of debts due by Jett's estate, and the appellants' construction, on this point, is that it was the duty of the appellee, as administrator, to have sold the slaves and paid the debts before the slaves were emancipated. But in determining this question, we must view the case in the same light in which it would be proper to view it if the testatrix were now living, and this were a suit by her against the defendant asserting the same liability in respect to the slaves which is now being asserted; for the appellants, who are her children and legatees, claiming, as they do, through her, must stand as to this matter in her shoes. Therefore, if she, if living, would be estopped from sitting up such a claim against the defendant as administrator, so also are they estopped from sitting it up against him.

That such a claim could not have been successfully asserted by her is clear. The whole of his estate was left to her by her deceased husband, Jett, subject to the payment of his debts, and soon after his death she qualified as his executrix. It was her duty as executrix to have paid the debts, but as none of the creditors were pressing for their money, she determined not to sell the slaves, but to keep them, if possible, saying she would try to raise money from other sources with which to pay the debts; and she did keep them until their emancipation. When she intermarried with the appellee, and afterwards when he qualified as Jett's administrator, he found the slaves in her possession, claimed by her as her separate estate, and if he chose not to disturb that possession, she surely had no cause of complaint against him on that ground, and if

she had none, the appellants had none.    There is no error, therefore, in the decree in this particular.

2. The next question is as to the appellee's liability for the use and occupation of the farm.    It appears that after the death of the testatrix he continued in possession of the land, from the year 1870 until 1884, a period of about fourteen years, and the appellants contend that he is justly chargeable with rents and profits for the whole of that time.    In other words, their contention is that the rents and profits of the land ought to have been applied, during that time, to the extinguishment *pro tanto* of the indebtedness of the estate, and, as that was not done, that he ought now to be held accountable for them.    The circuit court decreed that he was liable to the appellants for such rent as may have occurred for the five years next preceding the institution of this suit, or for so much of that time as he was in possession of the land, and no more, and we think this was correct.    He was not in possession of the land in his fiduciary capacity, and hence the statute of limitations bars any recovery against him for rent for more than that time.    In other words, what he derived from the farm was not a part of the assets of the estate for which he is responsible as executor, but belonged to the appellants, as devisees, and for which he became liable to them personally. This sum was fixed by the commissioner at $75 *per annum*, exclusive of the taxes, which was approved by the court, and this result is supported by evidence returned with the report.

3. Another question is as to the credit allowed the appellee for sums paid out as attorney's fees in certain litigation in which Jett's estate was involved, and in which various sums of money were from time to time recovered, aggregating nearly $3,000.    This litigation was conducted for the estate by two attorneys, Capt. H. R. Garden and the late John Murray Forbes, under a contract for a contingent fee of fifty per cent., which was paid out of the recovery, and of this payment the appellants complain as being excessive.    The evidence upon

the point is that there was much difficulty in settling the estate, and that it became necessary to institute several chancery suits, which were hotly contested for a number of years, and the prosecution of which required much time and labor, without which there would have been no recovery. Under all the circumstances the commissioner reported the contract as reasonable, and there is nothing in the record to warrant this court in holding differently.

4. Lastly, objection is made to two other credits which were allowed the appellee—one the medical bill of Dr. Amos Payne, for $40, the other the bill of Dr. McGuire for $165.20. A portion of these bills was for attending the children of the testatrix and the appellee, but the evidence shows that she considered such bills as her own, and paid them. It is also contended that the Payne bill was improperly allowed, because barred by the statute of limitations. But this does not appear from the evidence, although the account began in 1862. Payments were from time to time made upon it, and it continued to run until the death of the testatrix. We are of opinion that both credits were properly allowed, and that the decree must be affirmed.

DECREE AFFIRMED.